891 F.2d 292
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jackie D. PRICE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-1299.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1989.
 
 Before BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Jackie D. Price appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of Price's claim for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act as amended. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed his application for disability insurance benefits on March 1, 1985, alleging that he became disabled and unable to work on October 19, 1984, due to psychosis and constant pain in the neck, shoulders and lower back that occurs when reaching, bending, lifting, pulling, standing or walking. The Secretary denied claimant's application on May 3, 1985. The Secretary denied claimant's application upon reconsideration on July 30, 1985. On October 18, 1985, the Secretary ordered the application remanded pursuant to the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, § 5, 98 Stat. 1794, 1801 (1984) (1984 Disability Amendments), in order to readjudicate Price's case in light of the newly promulgated disability regulations. The Secretary thereafter denied claimant's application on July 16, 1986. The Secretary again denied claimant's application upon reconsideration on January 8, 1987. Dissatisfied with the Secretary's determination, the claimant requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on May 7, 1987.
 
 
 3
 On June 9, 1987, the ALJ issued his decision denying benefits to the claimant. The Appeals Council denied claimant's request for a review on November 9, 1987, making the ALJ's decision the final decision of the Secretary. Claimant appealed to the district court. On November 23, 1988, the United States Magistrate issued a Report and Recommendation proposing that the Secretary's decision denying appellant's claims be upheld. Claimant filed objections to the Magistrate's Report and Recommendation. On February 6, 1989, the district court issued its Memorandum Opinion and Order granting the Secretary's motion for summary judgment in accordance with the Magistrate's Report and Recommendation. Claimant thereafter filed this timely appeal.
 
 
 4
 The following evidence was introduced at the May 7, 1987 hearing.
 
 
 5
 Claimant was born on August 21, 1949, and was 35 years old when he filed for disability insurance benefits on March 1, 1985. Price is a high school graduate who had previously worked as a warehouseman, body shop sander and cashier. Price last worked in October, 1984, alleging disability beginning October 19, 1984 due to psychosis and constant pain in the neck, shoulders and lower back that occurs when reaching, bending, lifting, pulling, standing or walking. Claimant's previous job required him to push a cart through a warehouse selecting various automotive parts from stacked racks.
 
 
 6
 Price claims to have initially injured his back in 1975 when he fell from a 12-15 feet high storage rack at work. Claimant testified that he experiences constant pain, varying in severity, generating from his head to his neck and shoulders, down to his back and left knee. He claims that the pain worsens when walking, standing, sitting and reaching. Price adds that his sleep is interrupted by pain, enabling him to sleep for only three to four hours per night. Claimant currently treats his condition with medication, a Transcutaneous Electric Nerve Stimulator (TENS) unit, and by lying down. Price is married and has two step-children. He is able to take care of many of his personal needs, perform limited work around the house and yard, drive short distances, and walk for a limited duration. Claimant testified that he can lift 10 to 15 pounds without being adversely affected.
 
 
 7
 Dr. Gregory Irvine examined the claimant from August, 1982 until November, 1984. In a medical report dated April, 1985, Dr. Irvine noted that claimant's leg raising was slightly limited, the range of motion of his cervical spine was slightly limited, and the range of motion of his lumbar spine was limited. However, the doctor noted that the range of motion of claimant's shoulders was full and sensory, and his motor and reflex functions were normal. Price's gait was normal and there was no loss of grip strength or fine or gross dexterity. Dr. Irvine reported that an x-ray of the lumbar spine revealed disc space narrowing at C6-C7 and L5-S1, but an electromyography (EMG) was negative. The doctor noted that claimant had no behavioral abnormality except for mild reactive depression. Dr. Irvine diagnosed degenerative disc disease at C6-C7 and L5-S1.
 
 
 8
 In March, 1985, Dr. Paul Rubinfeld evaluated the claimant and noted that past EMG, nerve conduction studies, and blood tests were normal. Physical examination revealed tenderness at multiple trigger points in claimant's shoulder and back, and tenderness along the spine to palpation. Sensory and reflex examinations were normal though straight leg raising was limited. Dr. Rubinfeld diagnosed chronic myofascial pain syndrome, lumbosacral strain, and a history of gastritis and peptic ulcer disease.
 
 
 9
 In April, 1985, claimant underwent an orthopedic examination by Dr. Sinha. Dr. Sinha noted that Price's lumbar spine appeared normal without scoliosis or paravertebral muscle spasm, and his range of motion was limited only on forward flexion. Range of motion in the shoulders was normal and pain-free. Neurological examination of the upper and lower extremeties showed bilaterally normal reflex, motor, and sensory functions. Though Dr. Sinha concluded that the claimant appeared to have a painful lower back of unknown etiology, he concluded that Price's condition had a considerable amount of functional overlay.
 
 
 10
 Dr. Gregory Cesul, a chiropractic physician, found that Price's range of motion of the cervical and lumbar spines was limited on all planes and that muscle spasm was present in the cervical, thoracic and lumbo-pelvic areas. Neurologic examination was negative for sensory, reflex and motor deficits. X-rays of the cervical spine revealed mild discogenic spondylosis with lipping, moderate osteoarthritic changes, and narrowed disc space at C6. X-rays of the lumbosacral spine showed moderate osteoarthritic changes and narrowed L5 disc space. Dr. Cesul concluded that claimant had progressive degenerative disc disease and that he could not return to his previous occupation as a warehouseman.
 
 
 11
 In July, 1986, claimant was evaluated by Dr. George Dean. Dr. Dean noted a decreased range of motion in the left shoulder and lumbar spine, muscle spasms and tenderness in the paraspinal region, diminished disc space at C5-C6 and C6-C7, and straightening of the lordotic curve of the lower cervical spine, the kyphotic curve of the thoracic spine, and the lordotic curve of the lumbar spine. However, no abnormalities in the shoulders or hips were noted. Dr. Dean diagnosed cervical sprain, cervical disc syndrome, degenerative arthritis of the cervical spine, lumbar sprain, and lumbar disc syndrome.
 
 
 12
 In December, 1986, Dr. H.J. Kim evaluated the claimant and found that the range of motion of the lumbosacral and cervical spines was limited but the range of motion of the arms and legs was normal. Straight leg raising tested negative in the sitting position but positive in the supine position. Sensory and motor functions were normal and there were no muscle spasms or sciatic notch tenderness. Dr. Kim concluded that Price had chronic pain syndrome without any significant neurologic impairment.
 
 
 13
 Regarding the claimant's mental condition, Samuel I. Goldstein, a psychologist, conducted an examination of Price in May, 1985, and reported that the claimant had a generalized anxiety disorder with some indication of significant depression and some aspects of a somatization disorder, adding that Price was preoccupied with his physical limitations. In June, 1986, Dr. Charles O. Brosius, a psychiatrist, evaluated Price and found him to be mildly depressed, tense, anxious and angry. The psychiatrist diagnosed depressive neurosis, a passive dependent personality, and a history of chronic alcoholism and drug addiction that were allegedly in remission.
 
 
 14
 Dr. O.B. Lee, a psychiatrist, evaluated Price in July, 1986, and found him to be verbally hyperproductive, spontaneous, relevant and coherent with no accompanying hallucinations, delusions or mood swings. The psychiatrist found Price to be oriented to time, place and person. Claimant had recent and remote memory, and could calculate and think abstractly. Dr. Lee diagnosed Price as having an antisocial personality disorder, secondary depression, and anxiety due to physical illness.
 
 
 15
 Dr. Saul Z. Forman, a psychiatrist, testified before the ALJ. Dr. Forman found Price's mental impairment to be a personality disorder of either the passive/aggressive or antisocial type. The psychiatrist noted that it was difficult to determine whether the claimant's limited daily activities were caused by his mental condition or by his physical condition, adding that Price wanted society to take care of him. The psychiatrist concluded that Price had no psychological reason for not working, and noted that Price selectively used facts to his advantage and that he showed no indication of episodes of deterioration in the workplace.
 
 
 16
 Dr. Peter G. Fotiu, a vocational expert, testified that no jobs suitable for Price existed if the claimant's testimony was deemed credible. However, if Price could perform unskilled light work that did not involve close supervision, significant production requirements, extensive bending, twisting or stooping, then claimant could perform machine attendant, inspection and assembly jobs that existed in the regional economy. The vocational expert estimated that 30,000 such jobs existed in the Detroit area and 60,000 in Michigan. Alternatively, the vocational expert noted that if Price could perform only sedentary work that allowed for a sit/stand option, then Price could perform various bench assembly and machine tending jobs. Nine thousand such jobs existed in the Detroit area.
 
 
 17
 Claimant argues that the Secretary's finding that he had the residual functional capacity to perform unskilled light work, or sedentary work, after October 19, 1984, is not supported by substantial evidence. Specifically, claimant argues that the combined effects of the various medical and personality disorders resulted in a marked limitation of functional capacity.
 
 II.
 A.
 
 18
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 
 19
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).
 
 
 20
 If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). See 20 C.F.R. §§ 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Price did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. §§ 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case the ALJ found that Price was not capable of returning to his particular occupation.
 
 
 21
 At this step in the analysis it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. Pt. 404, Subpt. P., App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, then the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case the ALJ determined that claimant's characteristics resembled, but did not identically match, the characteristics found in the residual functional capacity grid at Rule 202.21 suggesting no disability. 20 C.F.R. Pt. 404, Subpt. P., App. 2.
 
 B.
 
 22
 Claimant argues that the ALJ erroneously concluded that there was insufficient evidence to support a debilitating impairment beginning October 19, 1984, arising from his medical and personality disorders. We reject this argument.[1]
 
 
 23
 Claimant contends that he cannot perform light, or even sedentary, work. Light work involves lifting no more than twenty pounds at a time with more frequent lifting or carrying of less than ten pounds. Much walking or standing is often required, though prolonged sitting, with the occasional pushing and pulling of arm or leg controls, is included in this category. 20 C.F.R. § 404.1567(b). Sedentary work involves lifting and carrying small items including files, ledgers and tools weighing no more than ten pounds. A sedentary job entails much sitting with occasional standing and walking. 20 C.F.R. § 404.1567(a). The record contains substantial evidence to support the ALJ's finding that the claimant can perform light and sedentary work despite his physical and mental impairments. The ALJ found the claimant physically able to perform the full range of light work. Due to the claimant's personality disorders, however, the ALJ reduced the range of Price's residual functional capacity by placing restrictions on production schedules, close supervision, and interaction with co-workers.
 
 
 24
 Though claimant has been diagnosed with diffuse musculoskeletal complaints of pain and a personality disorder, the record contains little objective evidence of an underlying condition which would cause severe work-related functional limitations. The ALJ specifically found that the objective medical evidence failed to confirm the severity of the pain that claimant alleged, and that Price's underlying condition could not reasonably be expected to produce disabling pain.
 
 
 25
 This court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). However, subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. 20 C.F.R. § 404.1529. To support a claim for disability there must be objective medical evidence in the record of an underlying medical condition. Duncan, 801 F.2d at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition, or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id. In applying this standard the reviewing court should show deference to the decision of the administrative law judge in assessing credibility. Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 108 S.Ct. 1050 (1988).
 
 
 26
 Relying upon "more traditional medical evidence," the ALJ discounted the testimony of the chiropractor and determined that Price had normal motor, reflex and sensory functions, normal lordotic curve, only mild discogenic spondylosis, moderate osteoarthritic changes, no muscle spasms, no sciatic notch tenderness, and no abnormalities in the shoulders. Price's complaints of disabling pain were properly rejected because the medical evidence failed to confirm the severity of the pain. Though Price alleged fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, his personal observations and the objective medical evidence contradict.
 
 
 27
 Price further alleges that he suffers from a severe mental impairment. The mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines. Buress v. Secretary of Health & Human Servs., 835 F.2d 139, 142 (6th Cir.1987). A claimant must satisfy the documentation requirements of 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(B) to establish that a mental disorder reaches the level of severity to be considered disabling: "The existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." Price has provided insufficient medically documented evidence to satisfy this documentation requirement.
 
 
 28
 The claimant maintains that the ALJ failed to consider all of the claimant's impairments in combination. This claim is without merit. The ALJ considered all of the claimant's impairments in combination and concluded that these impairments did not prevent the claimant from performing light or sedentary work subject to certain nonexertional limitations. The ALJ, in his June 9, 1987 Decision, held:
 
 
 29
 The elements of this case were ably summarized by Dr. Forman at the hearing. The claimant has a lifelong habit of controlling people by passive-dependent behavior. In this case he has fastened upon a ten year old fall at work as a vehicle with which to have society take care of him. The medical record is replete with medical opinions that the claimant is exaggerating his pain. The medical evidence shows that only subjective signs are positive. The claimant repeatedly fails to show objective manifestations of any nerve root irritation or any other problem that would cause the type of pain he alleges. After ten years of alleged debilitating pain, there is no significant muscle atrophy, no muscle spasm, no muscle tension, or any of those objective signs which are not amenable to exaggeration and dramatization.
 
 
 30
 .............................................................
 
 
 31
 ...................
 
 
 32
 * * *
 
 
 33
 From an exertional standpoint, then, it is clear that the claimant could perform light exertional activity. This would allow him to lift no more than twenty pounds on an occasional basis and ten pounds frequently. This restriction would offer a significant protection to the claimant's musculoskeletal status. This level of restriction is far in excess of that dictated by the actual evidence of record.
 
 
 34
 The question now turns to the restrictions imposed by the claimant's personality disorder. Dr. Forman stated at the hearing that the claimant might be a difficult employee, but would be capable of work. [I am] constrained to place certain nonexertional limitations upon the claimant in order to assist him in the workplace.
 
 
 35
 The ALJ specifically stated that he considered the claimant's impairments in combination. Such statements are sufficient to show that the ALJ considered the combined effect of the claimant's impairments. Gooch, 833 F.2d at 591-92.
 
 
 36
 The appellant next alleges that the ALJ relied on the testimony of the psychiatric medical advisor, Dr. Forman, even though the advisor "interpreted medical records not in his field of specialty." This claim is without merit. The ALJ's Decision indicates that the psychiatrist's testimony necessarily included certain aspects of the medical testimony merely to summarize the elements of the case:
 
 
 37
 The doctor noted that the claimant did have a personality disorder, based upon the evidence of record. This was manifested by his substance abuse, his difficulty with the law, his conflict in his marriage, his difficulty accepting authority, and his exaggeration of his medical problems.... It was the doctor's opinion that the claimant has developed an attitude that society should take care of him. The doctor felt that the claimant's physical problems are not incapacitating, but he concentrates on them and insists upon using them to make other people take care of him. The doctor noted that this was called secondary gain, and the claimant has no motivation to return to a work situation.
 
 
 38
 Finally, Price maintains that the ALJ erred by constructing a hypothetical question which mischaracterized elements of Price's condition by omitting any mention of his neck and shoulder pain. This claim is similarly without merit. The ALJ need not include every alleged limitation in his hypothetical to the vocational expert. The ALJ must include only those limitations that are supported by substantial evidence. Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 780 (6th Cir.1987). Furthermore, the ALJ's hypothetical question to Dr. Fotiu, the vocational expert, clearly considered the varying degrees of pain that appellant claimed.
 
 
 39
 The ALJ's determination that the claimant retained the ability to perform available light and sedentary work is supported by substantial evidence. The judgment of the district court is therefore AFFIRMED.
 
 
 
 [1]
 The appellee argues that the claimant failed to preserve numerous arguments for appellate review by not properly objecting to the Magistrate's Report and Recommendation. We need not address this argument because we find all of the claimant's assignments of error to be substantively without merit